FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 08, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BILLY W.,<br><br>   Plaintiff,<br><br>  v.<br><br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>   Defendant. | No. 1:20-CV-03079-SAB<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT AND<br>DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT** |

Before the Court are Plaintiff's and Defendant's Motions for Summary Judgment, ECF Nos. 17, 18. Plaintiff is represented by Victoria Chhagan. Defendant is represented by Erin Highland, Jeffrey Staples, Sarah Moum, and Timothy M. Durkin. The motions were heard without oral argument. Having considered the briefing and the applicable law, the Court grants Defendant's motion and denies Plaintiff's motion.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 1

### Jurisdiction

Plaintiff filed a disability insurance benefits application on June 29, 2016, alleging disability as of his filing date. Plaintiff's claims were initially denied on October 20, 2016, and again upon reconsideration on January 5, 2017. The ALJ held a hearing on August 27, 2018, and then a supplemental hearing on April 2, 2019. On June 25, 2019, the ALJ issued an opinion affirming the denial of Plaintiff's claims for benefits.

Plaintiff requested review of the ALJ decision, which the Appeals Council denied on April 2, 2020. Plaintiff then filed a timely appeal with the United States District Court for the Eastern District of Washington on June 2, 2020. ECF No. 1. The matter is before this Court under 42 U.S.C. § 405(g).

### Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The steps are as follows:

(1) Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1520(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Id.*; *Keyes v. Sullivan*, 894 F.2d 1053,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 2

1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the ALJ proceeds to step two.

(2) Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1509. If the impairment is severe, the evaluation proceeds to the third step.

(3) Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step. Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.

(4) Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. § 404.1520(f). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

(5) Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. § 404.1520(g). The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id*. At Step

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . # 3**

Five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

## Standard of Review

The ALJ's determination will be set aside only when their findings are based on legal error or are not supported by substantial evidence in the record as a whole. *See Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## Facts

Plaintiff was 29 years old at the time of his alleged disability onset date. Plaintiff did not complete high school or obtain his GED. He states that, while he was in school, he was in special education for learning disabilities and behavioral problems. Plaintiff also alleges that he has been assessed with a verbal IQ of 67, a

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 4

performance IQ of 81, and a full-scale IQ of 72. Plaintiff has worked primarily as a laborer, janitor, and dishwasher.

In Plaintiff's application, he alleged that he had mental limitations—specifically anxiety, depression, and PTSD. AR at 228. In his opening brief, Plaintiff alleges that he has other long-standing mental impairments, including bipolar disorder, schizoaffective disorder, psychotic disorder, panic disorder, PTSD, and a borderline personality disorder. ECF No. 17 at 3-4. Plaintiff also alleges that he has severe behavioral problems, including physical aggression, threatening and intimidating others, refusing to work, and disrupting others. Finally, Plaintiff has a history of alcohol and drug abuse, particularly of methamphetamine.

### The ALJ's Findings

On June 25, 2019, the ALJ issued an opinion affirming denial of benefits. The ALJ concluded that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. Thus, the ALJ held that Plaintiff was not disabled. AR at 26.

At **step one**, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 29, 2016, the alleged disability onset date. *Id.* at 15.

At **step two**, the ALJ found that Plaintiff had the following severe impairments: post-traumatic stress disorder (PTSD); panic disorder; schizoaffective disorder; and drug and alcohol abuse. *Id.* at 15–16.

At **step three**, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals any Listing. *Id.* at 16-17. The ALJ concluded that Plaintiff had a residual function capacity to perform:

> medium work as defined in 20 CFR 416.967(c) except the claimant can perform simple, routine, and repetitive tasks with only ordinary production requirements. He can perform no fast paced work. The

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . # 5**

claimant would work best independently with superficial contact with coworkers and the general public.

*Id*. at 17.

At **step four**, the ALJ found that Plaintiff was unable to perform past relevant work as a Janitor or Agricultural Produce Sorter. *Id.* at 24–25.

At **step five**, the ALJ found that Plaintiff was not disabled and that he was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including Industrial Cleaner, Laundry Worker, and Cleaner II. *Id*. at 25–26.

### Issues for Review

1.  Did the ALJ err by failing to adhere to Social Security rules and regulations pertaining to drug and alcohol abuse?

2.  Did the ALJ err by failing to provide sufficient reasons for rejecting medical opinions?

### Discussion

1.  <u>Did the ALJ err by failing to adhere to Social Security rules and regulations pertaining to drug and alcohol abuse?</u>

Plaintiff argues that the ALJ erred by failing to follow Social Security guidelines regarding drug and alcohol abuse. Specifically, Plaintiff argues that the ALJ can only find that drug and alcohol abuse is material to a finding of disability if (1) the record is fully developed and (2) the evidence establishes that a claimant with co-occurring mental disorder(s) would not be disabled in the absence of drug and alcohol abuse. However, here, Plaintiff argues that Dr. Sally Clayton, Ph.D. ("Dr. Clayton") testified that she could not offer an opinion about Plaintiff's limitations in the absence of a six- to twelve-month period of abstinence from substance abuse. Thus, Plaintiff argues that—because Dr. Clayton could not conclude that Plaintiff would not be disabled in the absence of drug and alcohol

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 6

abuse—the ALJ should have found Plaintiff's drug and alcohol abuse immaterial and awarded him disability benefits.

Defendant argues that the ALJ correctly applied the Social Security guidelines regarding drug and alcohol abuse. Defendant states that the ALJ found that Plaintiff's drug and alcohol abuse was a severe impairment. However, Defendant states that the ALJ found that Plaintiff was not disabled, *even when* considering the effects of his drug and alcohol abuse. Thus, Defendant argues that the Court should affirm the ALJ's findings that Plaintiff is not disabled.

Plaintiff in reply argues that, though the ALJ did not make a finding of disability, she in effect found that substance abuse was material because she rejected medical opinion evidence supporting a finding of disability based on Plaintiff's drug and alcohol abuse. Thus, Plaintiff argues that the ALJ should have (1) assessed Plaintiff's limitations based on both his mental impairments and his drug and alcohol abuse in order to determine whether he had a disability and then (2) determined whether substance abuse was material to the finding of Plaintiff's disability. But here, Plaintiff argues that the ALJ instead ignored the effects of substance abuse when making her disability finding.

*Legal Standard*

Generally, a claimant "cannot receive disability benefits 'if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citing 42 U.S.C. § 423(d)(2)(C)). In reaching a finding of disability status, the ALJ must follow a specific analysis that incorporates the sequential evaluation discussed above. 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ first must conduct the five-step inquiry without attempting to determine the impact of a substance abuse disorder. *Id.* If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not entitled to benefits, and there is no need to proceed with further analysis. *Id.* If the ALJ finds the claimant

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 7

disabled, and there is evidence of substance abuse, the ALJ must then proceed under the sequential evaluation and §§ 404.1535 and 416.935 to determine if the claimant would still be disabled absent the substance abuse. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence supporting a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

*Analysis*

Having considered the ALJ's opinion and Plaintiff's medical records, the Court upholds the ALJ's decision because there is substantial evidence in the record to support that Plaintiff was not disabled.

The ALJ found that Plaintiff was not disabled because he had the residual functional capacity to perform medium work. AR at 25-26. In making this finding, the ALJ followed a two-step process. First, the ALJ considered whether there was an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce Plaintiff's symptoms. 20 C.F.R. § 416.929, Social Security Ruling (SSR) 16-3p. Second, the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited his functional limitations. *Id.* For statements about the intensity, persistence, or functionally limiting effects of Plaintiff's pain or other symptoms that were *not* substantiated by objective medical evidence, the ALJ considered other evidence in the record to determine if Plaintiff's symptoms limited his ability to work. *Id.*

For the first step, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR at 19. To reach this conclusion, the ALJ considered Plaintiff's testimony at two hearings: an initial hearing in August 2018 and a supplemental hearing in April 2019 specifically to address Plaintiff's substance use and disability. At the first

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . # 8**

hearing, Plaintiff testified that his most limiting impairment was his post-traumatic stress disorder. *Id.* at 18, 43–48. He further testified that he was depressed, experienced traumatic flashbacks, and did not like to talk about his trauma. *Id.* Finally, he testified that talking about his trauma drove him to use substances and that he would isolate socially and sleep in episodes that could last up to three or four weeks. *Id.* When the ALJ asked what Plaintiff did during the day, Plaintiff replied that he would sleep, help clean his aunt's house, or babysit his cousin's children. *Id.* He also stated that he cared for these children every day by feeding them and taking them to school. *Id.* However, Plaintiff explained to the ALJ that he could not perform work—even in the absence of substance use—because he had difficulty interacting with others. *Id.* When asked about his substance use, Plaintiff stated that he last drank alcohol in 2016 and that he last used methamphetamine "a couple days ago." *Id.*

At the second hearing, Plaintiff again testified about his impairments, their limiting effects, and his activities of daily living. *Id.* at 18–19, 65–67, 68–73. Plaintiff testified that he stopped using drugs unassisted and outside of a treatment setting, but that he was still limited by his mental health impairments. *Id.* However, at this hearing, Plaintiff also provided testimony that cast doubt on his credibility. For example, Plaintiff denied that he had ever been a sex worker or on probation, even after the ALJ presented evidence of past sworn testimony of Plaintiff describing his history with sex work and probation. *Id.* Furthermore, Plaintiff provided testimony that called into question the severity of his impairments. For example, when the ALJ cited to evidence in the record showing a lower level of impairment, Plaintiff discounted this evidence as being due to care providers "[not] listen[ing] to what [he's] really saying" and "putting words in [his] mouth, like always." *Id.* at 71. Similarly, when asked about the treatment advice from his care providers recommending that he apply for work every day, Plaintiff simply stated that he was too stressed to work and had no motivation. *Id.* at 81.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . # 9**

At the second step, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Specifically, the ALJ noted that Plaintiff's inconsistent accounts of his sobriety, ability to work, work history, history with the criminal justice system, and failure to cooperate with multiple clinical providers and treatment recommendations led her to scrutinize Plaintiff's subjective testimony more carefully when determining the impact of his impairments. *Id.* at 19–20. The ALJ also noted that the objective medical evidence in the record showed that Plaintiff was able to express himself with normal speech, cooperative, pleasant, able to maintain eye contact and act within normal behavioral limits, and oriented in all spheres; further, that Plaintiff exhibited a normal memory and was otherwise within normal cognitive limits. *Id.* at 21, 392, 471, 497, 503, 509, 511, 521, 591, 612, 718. Finally, several medical opinions in the record described Plaintiff's ability to learn new tasks, perform tasks after short instructions, and adapt to work environments as only mildly or moderately limited. *Id.* at 574–75, 584, 786–87. Therefore, even taking into account Plaintiff's impairments, the ALJ concluded that Plaintiff had the residual functional capacity to perform medium, non-fast paced, independent work and thus was not disabled. *Id.* at 21, 25, 26.

Additionally, the Court finds that there is substantial evidence supporting that Plaintiff's substance abuse was not material to the ALJ's finding of non-disability. Plaintiff argues that, pursuant to SSR 13-2p, the ALJ cannot find substance abuse material if the evidence in the record does not establish that Plaintiff's co-occurring mental disorder(s) would improve to the point of non-disability in the absence of substance abuse. ECF No. 17 at 5. However, Plaintiff argues that the ALJ in effect found that substance abuse was material because she rejected medical opinion evidence supporting a finding of disability even absent Plaintiff's drug and alcohol abuse. *Id.*; ECF No. 19 at 2.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . # 10**

In finding Plaintiff not disabled, the ALJ rejected the medical opinion of Laurie Jones, MS LMFT ("Ms. Jones"), who continuously treated Plaintiff as his therapist during the relevant period. AR at 60. Ms. Jones reported that Plaintiff would have marked limitations absent substance abuse. *Id.* at 24, 587–90, 1024–28. Conversely, the ALJ assigned great weight to the opinion of Dr. Clayton, who testified at Plaintiff's April 2019 hearing as an objective medical expert after reviewing Plaintiff's medical records. *Id.* at 20–21, 62–62. In contrast to Ms. Jones, Dr. Clayton stated that there was difficulty in assessing the degree of Plaintiff's limitation given his ongoing substance abuse. *Id.* at 20, 65, 78. Dr. Clayton testified that she did not agree with the opinions of other experts in the record finding Plaintiff disabled because it was impossible to determine Plaintiff's limitations without a six-to-twelve-month period of sobriety. *Id.*

The ALJ properly weighed the opinions of Ms. Jones and Dr. Clayton. The ALJ heavily weighed the opinion of Dr. Clayton because she had the opportunity to review the entire medical record, her opinions were well supported by specific references to the medical evidence, and her opinions were consistent with other medical reports in the record. AR at 22; *see also id.* at 522–25 (Dr. Steven Olmer, M.D. reported that he could not recommend Plaintiff for disability due to inconsistently reported symptoms and a lack of enough sustained objective information). Conversely, the ALJ assigned no weight to the opinion of Ms. Jones because her opinion was inconsistent with the overall record and Plaintiff's own descriptions of his abilities. *Id.* at 24. Notably, Ms. Jones reported that Plaintiff was not capable of maintaining a regular schedule and getting up in the morning, which contradicts Plaintiff's own testimony that he was able to regularly care for his cousin's children by feeding them and taking them to school. *Id.* at 18, 24, 43–48. Such inconsistencies suggest that Ms. Jones overly relied on Plaintiff's own subjective complaints of his limitations, which the ALJ noted reduced the supportability of her opinion. *Id.* at 24. When taking into account the medical

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 11

opinion evidence in the record and the unreliability of Plaintiff's self-reported symptoms, there is substantial evidence to support the ALJ's conclusion that Plaintiff could perform medium work and therefore was not disabled.

The ALJ properly adhered to Social Security rules and regulations by engaging in the five-step inquiry without attempting to determine the impact of any substance abuse disorder that Plaintiff might have. 20 C.F.R. §§ 404.1535(a), 416.935(a). Because the ALJ found that Plaintiff was not disabled, the ALJ was not required to proceed with any further analysis regarding Plaintiff's substance abuse. Moreover, there was substantial evidence supporting both the ALJ's finding of non-disability and the fact that substance abuse was not material to her decision. Thus, the Court upholds the ALJ's decision.

2. Did the ALJ err by failing to provide sufficient reasons for rejecting medical opinions?

Plaintiff also argues that the ALJ failed to properly weigh the opinions of four different people or sets of persons: (1) Ms. Jones; (2) Dr. Clayton; (3) Patrick Metoyer, Ph.D. ("Dr. Metoyer"); and (4) the Department of Social and Health Services (DSHS) examiners, including R.A. Cline, Psy.D. ("Dr. Cline"); Holly Petaja, Ph.D. ("Dr. Petaja"); and Tasmyn Bowes, Psy.D. ("Dr. Bowes") (collectively the "DSHS examiners"). The Court shall discuss each in turn.

a. Ms. Jones

Plaintiff argues that the ALJ improperly rejected Ms. Jones' opinion. Plaintiff states that the ALJ rejected Ms. Jones' opinion because (1) she did not address Plaintiff's drug and alcohol abuse when proffering her conclusions on Plaintiff's limitations and (2) she relied on Plaintiff's subjective complaints of limitation. However, Plaintiff states that (1) in her first assessment, Ms. Jones clearly indicated that her conclusions excluded any limitations due to drug and alcohol abuse and (2) in her second assessment, which occurred more than six months after Plaintiff testified that he had stopped using methamphetamines, she

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . # 12**

still noted that Plaintiff had marked limitations in all the functional areas. Plaintiff also states that Ms. Jones based her conclusions not only on Plaintiff's subjective complaints, but also on her numerous encounters with Plaintiff, her knowledge about his background, and her observations and impressions. Thus, Plaintiff argues that the ALJ rejecting Ms. Jones' opinion constitutes harmful error because her assessment supported a finding of Plaintiff's disability, even without the drug and alcohol abuse.

Defendant in response argues that the ALJ had valid reasons for rejecting Ms. Jones' opinion. Defendant states that Ms. Jones indicated that she excluded the effects of drug and alcohol abuse from her first assessment of Plaintiff, but that this exclusion was not valid because Plaintiff's drug and alcohol abuse could not reliably be differentiated from his other mental health concerns. Additionally, Defendant states that Ms. Jones' opinion about Plaintiff's mental limitations came "in the form of checklists with minimal supporting narrative explanations" and that her contemporaneous mental status examinations of Plaintiff were inconsistent with her assessment conclusions. ECF No. 18 at 10. Finally, Defendant states that Ms. Jones' August 2018 opinion that Plaintiff was unable to maintain a schedule and get up in the morning was inconsistent with Plaintiff's self-described activities of taking his cousin's children to school every morning. Thus, Defendant argues that these constituted sufficient reasons for the ALJ to reject Ms. Jones' opinion.

Plaintiff in reply first argues that Ms. Jones could both validly assess Plaintiff's mental limitations and exclude any limitations stemming from the drug and alcohol abuse. Second, Plaintiff argues that the ALJ's finding that Ms. Jones overly relied on Plaintiff's subjective complaints was not supported by any discussion or evidence, whereas Ms. Jones' report specifically states that she based her assessment on many other factors besides Plaintiff's symptom testimony. Finally, Plaintiff argues that Defendant's example of inconsistency between Ms. Jones' assessment and Plaintiff's self-described activities was taken out of

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 13

context—instead, Plaintiff argues that he told Dr. Clayton that he could only take his cousin's children to school every day "80% of the time" due to his mental health limitations. ECF No. 19 at 5–6. Thus, Plaintiff argues that the ALJ improperly discounted Ms. Jones' opinion.

In determining whether a claimant's impairments are severe at step two, the ALJ evaluates medical evidence submitted and explains the weight given to the opinions of acceptable medical sources in the record. SSR 85–28. Primary weight is given to the views of treating physicians, absent specific and legitimate reasons for rejecting them that are supported by substantial evidence. 20 C.F.R. § 404.1527.[2] The opinion of an acceptable medical source, such as a physician or psychologist, is generally given more weight than that of an "other source." *See* SSR 06-03p. "Other sources" for opinions—such as nurse practitioners, physician's assistants, therapists, teachers, social workers, chiropractors, and nonmedical sources—are not entitled to the same deference as acceptable medical sources. 20 C.F.R. §§ 404.1502(e), 404.1527(f); *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016). An ALJ may discount an "other source's" opinion by providing a relevant reason for doing so. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Where a medical source opinion is based primarily on a claimant's self-reported symptoms, claimant credibility is an appropriate factor to consider in the evaluation of medical evidence at step two. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir.2005). Generally, more weight is given to the opinions of professionals who have a more substantial treatment relationship with the claimant. 20 C.F.R. § 416.927(c)(2).

---

[2] For Social Security disability claims filed on or after March 27, 2017, the ALJ "will not defer or give[] any specific evidentiary weight . . . to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). However, this claim was filed on June 29, 2016. AR at 228.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . # 14**

The Court finds that there is substantial evidence supporting the ALJ's decision to assign no weight to Ms. Jones' opinion. While Ms. Jones—whose official title is a Licensed Marriage and Family Therapist—is a certified health care professional and was a source of ongoing continuing treatment to Plaintiff during the relevant period, Ms. Jones is not a medical physician and is therefore not a qualified medical source. AR at 38, 47, 49, 60. Thus, Ms. Jones constitutes an "other source" and her opinion is not entitled to the same deference as an opinion from an acceptable medical source.

In her reports, Ms. Jones stated that Plaintiff experienced moderate to marked limitations in all four of the Paragraph B criteria. *Id.* at 24, 587–90, 1024–28. Specifically, Ms. Jones stated that Plaintiff was not capable of maintaining a regular schedule, could not tolerate stress, and could not tolerate interpersonal interactions. *Id.* Pursuant to the instructions that she was provided for her examination, Ms. Jones evaluated Plaintiff without considering his ongoing substance use. *Id.*

However, as discussed above, Ms. Jones' conclusions were inconsistent with Plaintiff's reports about his own abilities, suggesting that Ms. Jones overly relied on Plaintiff's self-reports of his limitations. For example, Ms. Jones concluded that Plaintiff would have difficulty maintaining a regular schedule. *Id.* at 590. But this is contradicted by Plaintiff's testimony that he cares for his cousin's children and takes them to school daily.[3] *Id.* at 18, 44–46. Additionally, Ms. Jones' conclusion

---

[3] At the initial hearing in 2018, Plaintiff testified that he would take his cousin's children to school and help clean his aunt's house every day. AR at 44–45. When the ALJ asked to what extent Plaintiff's impairments affected his ability to do these things, Plaintiff responded, "I'd say about 80 percent." *Id.* at 46. When the ALJ asked Plaintiff to elaborate on the effects of his impairments, Plaintiff responded: "Like, the rushing. Trying to rush to get the kids dressed. Sometime drivers driving

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . # 15**

that Plaintiff had moderate to marked limitations in all four of the Paragraph B criteria was inconsistent with several other expert and medical opinions on the record. *See, e.g.*, *Id.* at 61, 83–95, 97–110, 572–76, 781–85. Thus, because Ms. Jones is an "other source" and because there was substantial evidence supporting the ALJ discounting Ms. Jones' conclusions, the Court upholds the ALJ's decision regarding Ms. Jones' opinion.

### b. Dr. Clayton

Plaintiff argues that the ALJ improperly relied on Dr. Clayton's opinion to reach a conclusion of non-disability. Plaintiff states that Dr. Clayton testified that she could not offer an opinion about Plaintiff's functioning in the absence of a six- to twelve-month period of sobriety, which Plaintiff had not yet achieved at that time. Plaintiff also states that the ALJ gave "great weight" to Dr. Clayton's opinion in reaching her conclusion that Plaintiff was not disabled. But Plaintiff argues that Social Security guidelines state that, if the evidence fails to establish that a claimant with a co-occurring mental disorder(s) would improve to the point of non-disability without drug and alcohol abuse, the ALJ must find that the drug and alcohol abuse immaterial to the disability determination. Thus, Plaintiff argues that—because Dr. Clayton expressly refused to offer an opinion on whether

---

extra slow but you've got to go the speed limit and I don [sic] not like the speed limit. I just make sure I get the kids there on time because I feed them too." *Id.* From the testimony, it is unclear what Plaintiff's report of an 80% effect is referencing. If this referred to Plaintiff's impairments having an 80% effect on his ability to engage in daily tasks, the ALJ could have properly discounted that due to Plaintiff's other unreliable testimony. If, conversely, Plaintiff meant that he was only able to engage in these tasks 80% of the time, that is still significant and suggests that Plaintiff can keep a regular schedule.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . # 16**

Plaintiff's mental impairments would improve without drug and alcohol abuse—the ALJ improperly relied on her opinion to reach a conclusion of non-disability.

Defendant in response argues that Dr. Clayton's opinions do not contradict the ALJ's conclusion. Defendant states that the ALJ found that Plaintiff was not disabled, even considering his drug and alcohol abuse. Thus, especially because Dr. Clayton did not identify any functional limitations in Plaintiff, Defendant argues that her testimony provides no basis for overturning the ALJ's finding of non-disability.

Plaintiff in reply argues that, by relying on Dr. Clayton's testimony—which was given as part of a supplemental hearing to help assist the ALJ with a drug and alcohol abuse materiality finding—the ALJ in effect determined that Plaintiff was not disabled due to his substance abuse. Thus, Plaintiff argues that the ALJ should have engaged in the full drug and alcohol abuse analysis when determining whether Plaintiff was disabled.

The Court finds that there is substantial evidence supporting the ALJ's decision to assign great weight to Dr. Clayton's opinion. The ALJ can give greater weight to an acceptable medical source—such as a physician or psychologist—whose opinion is consistent with the record and supported with relevant explanation. 20 C.F.R. § 416.927. Here, the ALJ assigned great weight to Dr. Clayton's opinion because (1) though she was not a treating source, she was able to review Plaintiff's entire medical record prior to providing her opinion and (2) her opinion was both supported with relevant explanation and consistent with the entire record, including with opinions of other experts. AR at 22.

Plaintiff suggests that Dr. Clayton's opinion was paramount to the ALJ's finding of non-disability. However, given that other medical experts had the same opinion as Dr. Clayton, there is still substantial evidence supporting the ALJ's conclusion. For example, Dr. Olmer also stated that he could not provide a recommendation for disability "[a]s a result of inconsistent reports of symptoms

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 17

and treatment attendance." *Id.* at 524-25. Thus, the Court upholds the ALJ's decision to give greater weight to Dr. Clayton's opinion.

### c. Dr. Metoyer

Plaintiff argues that the ALJ erred in (1) giving weight to Dr. Metoyer's opinion because he did not review Plaintiff's medical records in order to reach his conclusions; (2) finding that Dr. Metoyer had not offered an opinion about Plaintiff's residual functional capacity; and (3) finding that the ALJ's conclusion about Plaintiff's residual functional capacity was consistent with that of Dr. Metoyer. First, Plaintiff states that, of all of Plaintiff's mental records, Dr. Metoyer only reviewed one report from 2009. Second, Plaintiff asserts that Dr. Metoyer assessed Plaintiff's functional limitations in both his narrative report and on the form attached to his report. Third, Plaintiff claims that, whereas Dr. Metoyer concluded that Plaintiff had moderate to marked limitations in various work situations, the ALJ did not account for these limitations in her own conclusions regarding Plaintiff's residual functional capacity.

Defendant in response argues that the ALJ's conclusions about Plaintiff's residual functional capacity were supported by substantial evidence, including Dr. Metoyer's opinion. Defendant states that Dr. Metoyer concluded that Plaintiff's ability to deal with usual stress in the workplace would be markedly impaired if he had to perform persistent activities or complex tasks, withstand task pressures, or interact with other individuals. Thus, Defendant argues that the ALJ relied on this conclusion and translated it into a residual functional capacity of simple, routine tasks with ordinary production requirements; no fast-paced work; and independent work with superficial contact with others. Defendant also argues that, just because Plaintiff may have found Dr. Metoyer's opinion less persuasive had he been the trier of fact, that is insufficient grounds to overturn the ALJ's findings.

Plaintiff in reply argues that the ALJ's conclusion about Plaintiff's residual function capacity is not consistent with Dr. Metoyer's opinion. Plaintiff states

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 18

that—while the ALJ's conclusion took into account some of Dr. Metoyer's conclusions, such as limiting Plaintiff to simple, routine, repetitive tasks—it did not account for others, such as Dr. Metoyer concluding that Plaintiff would be markedly limited in his ability to deal with usual stress in the workplace if it involved persistent activities, task pressure, or interacting with other individuals.

The Court finds that there is substantial evidence supporting the ALJ's decision to assign great weight to Dr. Metoyer's opinion. As discussed above, the ALJ can give greater weight to an acceptable medical source—such as a physician or psychologist—whose opinion is consistent with the record and supported with relevant explanation. 20 C.F.R. § 416.927. Here, Dr. Metoyer concluded that Plaintiff experienced mild and moderate limitations in most of the assessed categories but had a marked limitation in "responding appropriately to usual work situations and changes in a routine work setting." AR at 786–87. Specifically, Dr. Metoyer stated that Plaintiff "appears to have the ability to reason and understand" and Plaintiff's "ability to maintain regular attendance in the workplace is moderately impaired." *Id.* at 785. However, Dr. Metoyer stated that Plaintiff would experience marked limitations in the workplace with complex tasks and interacting with other individuals. *Id.*

Thus, when determining Plaintiff's residual functional capacity, the ALJ stated that Plaintiff could perform simple, routine, and repetitive tasks with superficial contact with coworkers and the general public. *Id.* at 17. This is a reasonable interpretation and incorporation of Dr. Metoyer's opinion that Plaintiff had a marked limitation in completing complex tasks and interacting with others. Thus, Dr. Metoyer's opinion is consistent with the ALJ's determination of Plaintiff's residual functional capacity.

Plaintiff also argues that Dr. Metoyer did not review Plaintiff's medical records to reach his conclusions and that Dr. Metoyer only reviewed one report from 2009. This is contradicted by Dr. Metoyer's report, which stated "[a] review

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . # 19**

of records was conducted including Yakima Neighborhood Health Services, record dated 08/03/2018, 07/18/2018, physical evaluation record dated 09/06/2016, psychological evaluation record dated 03/19/2009, The Psychological Corporation WAUS 3, full scale IQ score 58, less than 1% extremely low range, record dated 02/20/2009." *Id.* at 782. Thus, Dr. Metoyer's opinion was formed based on a direct examination of Plaintiff and a comprehensive review of his relevant medical records.

Because Dr. Metoyer is a medical source who engaged in a medical examination and review of medical records before providing an opinion about Plaintiff's limitations that was consistent with the ALJ's conclusion, the Court uphold the ALJ's decision to give great weight to Dr. Metoyer's opinion.

### d.  The DSHS examiners

Plaintiff argues that the ALJ assigned insufficient weight to Drs. Cline, Petaja, and Bowes' opinions. Plaintiff states that the ALJ only gave their opinions partial weight because the ALJ found that these doctors had relied on Plaintiff's subjective testimony, which the ALJ deemed not credible. However, Plaintiff states that these doctors' opinions were not solely based on Plaintiff's subjective testimony but were also based on their own observations and testing. Thus, Plaintiff argues that the ALJ discounting their opinions constitutes harmful error because these doctors' opinions supported a greater degree of mental limitation than the ALJ assessed in her findings.

Defendant in response argues that there was substantial evidence supporting the ALJ's decision to only give these doctors' opinions partial weight. For example, Dr. Cline stated that she based her evaluation on "information that is made available to the examiner . . . and the claimant's self-report"—however, Defendant states that no information was made available to Dr. Cline, which meant that she solely relied on Plaintiff's self-reporting. ECF No. 18 at 17. Similarly, for Drs. Petaja and Bowes, they stated that they relied on Dr. Cline's description of

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 20

Plaintiff's symptoms and Plaintiff's client report, respectively. Moreover, Defendant states that the ALJ was justified in giving these doctors' opinions less weight because their opinions were inconsistent with Plaintiff's record as a whole and because the doctors did not offer detailed explanations to support their opinions.

Plaintiff in reply once again argues that, by discounting the DSHS examiners' opinions, the ALJ essentially made a finding that Plaintiff was not disabled due to his substance abuse. Plaintiff also argues that the DSHS examiners based their opinions on more than Plaintiff's self-report—they also considered their own observations and testing.

The Court finds that there is substantial evidence supporting the ALJ's decisions regarding the DSHS examiner opinions. As stated above, the ALJ can assign weight to the opinion of experts based on consistency with the record, relevant examination of the claimant, and supporting explanations. 20 C.F.R. § 416.927.

First, there is substantial evidence supporting the ALJ's decision to give Dr. Cline's decision partial weight. AR at 23. Dr. Cline reported that, because Plaintiff experienced moderate limitations in several basic work activities like understanding, remembering, and persisting in tasks by following instructions, Plaintiff's overall impairment level was moderate. *Id.* at 574–75. This conclusion is consistent with the opinion of Dr. Metoyer, who similarly concluded Plaintiff had moderate limitations in understanding, remembering, and carrying out instructions, and making judgments on work-related decisions. *Id.* at 786.

However, while Dr. Cline reached a conclusion consistent with the overall record, Dr. Cline's review of Plaintiff's medical record suggest a reliance on Plaintiff's own self-reporting. In the report, Dr. Cline stated that the evaluation was based on "information that is made available to the examiner . . . and the claimant's self-report." *Id.* at 572. However, Dr. Cline's report notes that no

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 21

records were reviewed. *Id.* (stating "[r]ecords reviewed: N/A"). This suggests Dr. Cline's conclusion was solely based on Plaintiff's self-reporting, which the ALJ deemed inconsistent and unreliable. *Id.* at 19–21. Thus, because Dr. Cline's opinion—though consistent with the overall record—was based on Plaintiff's inconsistent self-reporting, the Court upholds the ALJ's decision to partially weigh Dr. Cline's opinion.

Second, there is substantial evidence supporting the ALJ's decision to give Dr. Bowes' opinion partial weight. Dr. Bowes is a psychologist—thus, as an acceptable medical source who directly examined Plaintiff, her opinion is allowed some weight. *Id.* at 580–86; SSR 06-03p. However, Dr. Bowes did not review any of Plaintiff's records before reaching her conclusion. AR at 581 (stating "[r]ecords reviewed: None"). Thus, because Dr. Bowes did not review any of Plaintiff's medical records, the Court upholds the ALJ's decision to give Dr. Bowes' opinion partial weight.

Finally, there is substantial evidence supporting the ALJ's decision to give little weight to Dr. Petaja's opinion. *Id.* at 23-24. In forming her opinion, Dr. Petaja did not directly examine Plaintiff, but instead relied on only three medical records, one of which was Dr. Cline's evaluation that relied on Plaintiff's inconsistent self-reporting. *Id.* at 578. Thus, the Court upholds the ALJs decision to give Dr. Petaja's opinion little weight.

//

//

//

//

//

//

//

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 22

Accordingly, **IT IS HEREBY ORDERED:**

1.     Plaintiff's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

2.     Defendant's Motion for Summary Judgment, ECF No. 18, is **GRANTED.**

3.     The District Court Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 8th day of October 2021.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . .** # 23